## UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARMANDO HERNANDEZ,<br><br>Plaintiff,<br><br>v.<br><br>OGBOEHI, et al.,<br><br>Defendants. | Case No. 1:20-cv-01019-ADA-SAB (PC)<br><br>FINDINGS AND RECOMMENDATIONS REGARDING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT<br><br>(ECF No. 50) |

Plaintiff Armando Hernandez is proceeding pro se and in forma pauperis in this civil rights action filed pursuant to 42 U.S.C. § 1983.

Currently before the Court is Defendants' motion for summary judgment, filed October 27, 2022.

**I.**

**RELEVANT BACKGROUND**

This action proceeds against Defendants Ogbuehi, Gonzales, and Onyeje for deliberate indifference to a serious medical need in violation of the Eighth Amendment and against Defendants Ogbuehi and Gonzales for retaliation in violation of the First Amendment. (ECF No. 20.)

On July 2, 2021, Defendants filed an answer to the operative complaint. (ECF No. 24.)

The Court issued the discovery and scheduling order on July 20, 2021. (ECF No. 28.)

1

1    On May 31, 2022, the Court granted Defendants' motion to modify the discovery and
2 scheduling order and extended the dispositive motion deadline to August 29, 2022. (ECF No.
3 43.) On August 23, 2022, the Court granted Defendants' second motion to modify the discovery
4 and scheduling order and extended the dispositive motion deadline to October 28, 2022. (ECF
5 No. 45.)

6    As previously stated, on October 27, 2022, Defendants filed the instant motion for
7 summary judgment. (ECF No. 50.) Plaintiff filed an opposition on January 9, 2023, and
8 Defendants filed a timely reply on February 14, 2023. (ECF Nos. 57, 58, 59, 62.)

## II.

## LEGAL STANDARD

### A.   Summary Judgment Standard

Any party may move for summary judgment, and the Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a) (quotation marks omitted); Washington Mut. Inc. v. U.S., 636 F.3d 1207, 1216 (9th Cir. 2011). Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1) (quotation marks omitted). The Court may consider other materials in the record not cited to by the parties, but it is not required to do so. Fed. R. Civ. P. 56(c)(3); Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1031 (9th Cir. 2001); accord Simmons v. Navajo Cnty., Ariz., 609 F.3d 1011, 1017 (9th Cir. 2010).

In judging the evidence at the summary judgment stage, the Court does not make credibility determinations or weigh conflicting evidence, Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007) (quotation marks and citation omitted), and it must draw all inferences in the light most favorable to the nonmoving party and determine whether a genuine issue of material fact precludes entry of judgment, Comite de Jornaleros de Redondo Beach v.

City of Redondo Beach, 657 F.3d 936, 942 (9th Cir. 2011) (quotation marks and citation omitted).

In issuing at this Findings and Recommendations, the Court carefully reviewed and considered all arguments, points and authorities, declarations, exhibits, statements of undisputed facts and responses thereto, if any, objections, and other papers filed by the parties. Omission of reference to an argument, document, paper, or objection is not to be construed to the effect that this Court did not consider the argument, document, paper, or objection. This Court thoroughly reviewed and considered the evidence it deemed admissible, material, and appropriate.

### III.
### DISCUSSION

**A.     Summary of Plaintiff's Complaint**

Prior to his incarceration, Plaintiff was involved in a near fatal car accident on April 30, 2016. Plaintiff suffered multiple bone fractures, nine broken ribs, injuries to his right ankle, lower leg, right shoulder, and right elbow. Emergency surgery was necessary to reattach Plaintiff's right ankle and leg, and a metal rod, pins and plate were surgically implanted. Doctors informed Plaintiff that his body will be limited physically and he will suffer life-long pain due to the traumatic damage.

Dr. Thelma Fernandez was Plaintiff's primary doctor until his current incarceration. Upon Plaintiff's arrival at the California Department of Corrections and Rehabilitation (CDCR) reception center at Wasco State Prison, medical staff designated Plaintiff classified to be housed only on the lower tier and/or lower bunk in lieu of ADA accommodations with use of a cane and ankle brace. While housed at Corcoran State Prison, Plaintiff continued to suffer severe pain, and he filed an inmate appeal log number COR-18-07145. Plaintiff filed a second inmate appeal log number COR-19-00544 regarding the confiscation of his old ankle brace and prescription eyeglasses. Both appeal were denied.

In January 2019, Plaintiff was endorsed to be housed at Pleasant Valley State Prison (PVSP), level 3, due to his positive programming and behavior prior to long-term Corcoran

lockdown. Plaintiff submitted several medical slips, CDCR 7362 Forms, with regard to the serious pain he was suffering.

On February 11, 2019, Plaintiff was examined by Defendant Ogbuehi at PVSP. Plaintiff thoroughly explained his ongoing chronic pain he experienced since his arrival at PVSP on February 7, 2019. Plaintiff showed Ogbuehi the scars from his injuries and explained the shoulder injury caused by the car accident. Plaintiff requested a cane and/or orthopedic shoes which were approved by the podiatric doctor on January 31, 2019. Defendant Ogbuehi suggested fabrication of the podiatric report and falsely accused Plaintiff of bribery in lieu of a cane and/or orthopedic shoes. Ogbuehi stated, "What the fuck you do or say to get all this shit." Plaintiff replied, "I'm sorry you think that but I'm a lifer who has suffered from serious chronic pain and physical difficulty these medical devices would property assist." Ogbuehi responded, "how much you fucken pay lifer." Plaintiff replied, "I do not have to commit bribery or lie Dr. Nurse." Ogbuehi then stated, "You not gonna get nothing you lying lifer and I'm going to take your fucken back brace away for your smart ass if you don't like it all well you can't do nothing I'm the doctor." Plaintiff stated, "that's against the law." Ogbuehi replied, "Give me your back brace and get the fuck out of here or else I will press the emergency alarm."

On February 14, 2019, Plaintiff wrote Defendant Kelso about the conduct by Ogbuehi, but Plaintiff never received a response.

On this same date, Plaintiff submitted a health care grievance, appeal log number PVSP-HC-1900039, refuting Defendant Ogbuehi's allegations of bribery and fabrication of the podiatric report.

On February 28, 2019, Plaintiff had a doctor appointment in which he thoroughly explained his chronic pain. Defendant Ogbuehi simply laughed at Plaintiff then said, "You must be really stupid or clumsy." She then stated, "Don't come to prison you wouldn't have this problem." Plaintiff explained, "If he can have crutches to help him walking, ace band to wrap around his ankle or an leg/ankle brace." In a mocking laugh, Ogbuehi stated, "Stop laying it on you are lying" and" You not going to get nowhere. Write that up snitch. You (Mexicans) wetbacks always lie." Plaintiff stated, "I did not come here to fight or argue." Ogbuehi replied,

1  "You're good get the fuck out of here Hernandez write that up." Plaintiff said, "No please help
2  me out I really need medical attention I know everyone calls the witch doctor." Ogbuehi
3  stopped Plaintiff by stating, "I don't care get out or else I will push the emergency button and get
4  you toss in the hole for attacking me."

5        On March 1, 2019, Plaintiff submitted a health care inmate grievance, appeal log number
6  PVSP-HC-19000052, with regard to the February 28, 2019, incident. Plaintiff's grievance was
7  denied by Defendant Onyeje, and was subsequently denied at the third level of review on July
8  11, 2019.

9        On March 8, 2019, Plaintiff was interviewed by Defendant Gonzales with regard to
10 appeal log number PVSP-HC-19000039. Gonzales asked Plaintiff to withdraw the grievance to
11 avoid any trouble with Ogbuehi. Plaintiff refused and told Gonzales, "No Ogbuehi is not a foot
12 doctor, orthopedic doctor, chirop[r]actic doctor, elbow or shoulder specialist." Gonzales replied,
13 "How much time are you doing Hernandez because whatever you say Dr. Onyeje going with
14 what NP-Ogbuehi says." Plaintiff stated, "She said I bribe the podiatric for a cane, shoes, inner
15 soles, ankle brace and somehow fabricated the podiatric report on the medical access only
16 computers that's illegal and highly impossible." Gonzales told Plaintiff that "Ogbuehi knows
17 about this and just like the others nothing will be done against her. She has seniority." Plaintiff
18 replied, "The podiatric doctor approve all my medical devices I did not tell him to lie, cheat or to
19 be shady." Gonzalez stated, "Look you wasting your time dude." Plaintiff then read section
20 3350 from Title 15 of the California Code of Regulations.

21       Gonzales stated, "Good point Hernandez but Dr. Onyeje will look into your medical rile
22 and deny this grievance." Plaintiff stated, "I not lying about my chronic pain he can contact my
23 primary doctor Thelma Fernandez in Lancaster, California about it and my car accident my
24 severe pain. I want no problems anymore please help. Gonzales asked, "Show me where does it
25 hurt Hernandez." Plaintiff showed Gonzales the visible surgical scars. Gonzales said, "I ain't
26 going to mention the seriousness of your medical need you criminal lifers always lie." Plaintiff
27 stated, "This was a waste of time can I leave now." Gonzales replied, "If you continue with this
28 grievance you will make life harder."

1  Defendant Onyeje denied Plaintiff's grievance on April 12, 2019, and the response
2  provided no evidence to refute any of Plaintiff's factual assertions or allegations presented to
3  Defendant Gonzales.

4  Plaintiff's appeal was subsequently denied at the third level of appeal on July 11, 2019.

5  Plaintiff was subsequently then placed on transfer to another housing unit under the
6  disguise of high risk medical classification. This only occurred after Plaintiff filed the two health
7  care grievances.

**B.  Statement of Undisputed Facts[1]**

1. On February 11, 2019, Defendant Ogbuehi evaluated Plaintiff during a new arrival appointment to discuss his chronic lower back, right shoulder, wrist, and ankle pain. (Declaration of Ogbuehi (Ogbuehi Decl.) ¶¶ 4-5, Ex. A.; Pl.'s Dep. at 17:15-20.)

2. On February 28, 2019, Ogbuehi evaluated Plaintiff during a follow up appointment. (Ogbuehi Decl. ¶ 6, Ex. B.)

3. On March 8, 2019, as part of her duties as Registered Nurse in the health care appeals process, Defendant Gonzales interviewed Plaintiff regarding health care appeal, log number PVSP-HC-19000039. (Declaration of Gonzales (Gonzales Decl.) ¶ 5, Ex. A.)

4. During Gonzales' interview, Plaintiff requested a cane, orthotic shoes, and new pain medication. (Gonzales Decl. ¶ 5, Ex. A.)

5. Defendant Onyeje reviewed and denied Plaintiff's grievance, log number PVSP-HC-19000039. (Declaration of Onyeje (Onyeje Decl.) ¶ 4, Ex. A.)

6. Gonzales next encountered Plaintiff on April 3, 2019, as part of the health care appeals process regarding health care appeal, log number PVSP-HC-19000052. (Gonzales Decl. ¶ 6, Ex. B.)

7. Plaintiff stated that he disagreed with the medical treatment and was specifically unsatisfied with the medical care he received for his ankle pain. (Gonzales Decl. ¶ 6, Ex. B.)

8. Defendant Onyeje reviewed and denied Plaintiff's grievance, log number PVSP-

---

[1] Hereinafter referred to as "UF."

1  HC-19000052.  (Onyeje Decl. ¶ 5, Ex. B.)

2       9.     Gonzales encountered Plaintiff on May 30, 2019, as part of the health care appeal
3  process regarding health care appeal, log number PVSP-HC-19000085.  (Gonzales Decl. ¶ 7, Ex.
4  C.)

5       10.    Plaintiff requested a cane and new insoles for his orthotic shoes.  (Gonzales Decl.
6  ¶ 7, Ex. C.)

7       11.    Defendant Onyeje reviewed and denied Plaintiff's grievance, log number PVSP-
8  HC-19000085.  (Onyeje Decl. ¶ 6, Ex. C.)

9       12.    Gonzales encountered Plaintiff on August 19, 2019, as part of the health care
10 appeals process during an interview regarding health care appeal, log number PSP-HC-
11 19000085.  (Gonzales Decl. ¶ 8, Ex. D.)

12      13.    Plaintiff requested a cane or crutches to assist him with ambulation.  (Gonzales
13 Decl. ¶ 8, Ex. D.)

14      14.    Defendant Onyeje reviewed and denied Plaintiff's grievance, log number PVSP-
15 HC-19000014.  (Onyeje Decl. ¶ 7, Ex. D.)

16      15.    Other than reviewing Plaintiff's health care appeals, Gonzales and Onyeje did not
17 provide Plaintiff with medical care.  (Gonzales Decl. ¶¶ 2-3, 8; Onyeje Decl. ¶¶ 2, 8; Pl.'s Dep.
18 at 40:1-10; 44:21-24; 45:3-24.)

19     **C.**    **Analysis of Defendants' Motion**

20     Defendants argue that (1) it is undisputed that Ogbuehi, Plaintiff's primary care
21 practitioner, appropriately cared for his medical needs; (2) Onyeje and Gonzales did not ignore
22 Plaintiff's medical issues in his health care appeals; (3) Ogbuehi and Gonzales did not retaliate
23 against Plaintiff for submitting health care appeals, or for any other reason; and (4) Defendants
24 are entitled to qualified immunity.

25     1.    <u>Deliberate Indifference to Serious Medical Need</u>

26     A prisoner's claim of inadequate medical care does not constitute cruel and unusual
27 punishment in violation of the Eighth Amendment unless the mistreatment rises to the level of
28 "deliberate indifference to serious medical needs."  <u>Jett v. Penner</u>, 439 F.3d 1091, 1096 (9th Cir.

2006) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)). The two-part test for deliberate indifference requires Plaintiff to show (1) "a 'serious medical need' by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain,'" and (2) "the defendant's response to the need was deliberately indifferent." Jett, 439 F.3d at 1096. A defendant does not act in a deliberately indifferent manner unless the defendant "knows of and disregards an excessive risk to inmate health or safety." Farmer v. Brennan, 511 U.S. 825, 837 (1994). "Deliberate indifference is a high legal standard," Simmons v. Navajo County Ariz., 609 F.3d 1011, 1019 (9th Cir. 2010); Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004), and is shown where there was "a purposeful act or failure to respond to a prisoner's pain or possible medical need" and the indifference caused harm. Jett, 439 F.3d at 1096.

Negligence or medical malpractice do not rise to the level of deliberate indifference. Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir. 1980) (citing Estelle, 429 U.S. at 105-106). "[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle, 429 U.S. at 106; see also Anderson v. County of Kern, 45 F.3d 1310, 1316 (9th Cir. 1995). Even gross negligence is insufficient to establish deliberate indifference to serious medical needs. See Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990). Additionally, a prisoner's mere disagreement with diagnosis or treatment does not support a claim of deliberate indifference. Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989).

### a. Defendant Ogbuehi

Plaintiff alleges that Defendant nurse practitioner Ogbuehi was deliberately indifferent to his chronic pain and refused to provide him with durable medical equipment.

Between February 11, 2019, and July 23, 2019, (the relevant time period at issue), Ogbuehi evaluated Plaintiff for his chronic pain on four separate occasions. (Ogbuehi Decl. ¶¶ 5-8, Exs. A-D.) During the first visit on February 11, 2019, Defendant Ogbuehi declares that she "physically examined Plaintiff and noted, among other things, that Plaintiff had no leg

8

1  weakness, no swollen joints, no joint pain, no chest pain, no shortness of breath, no dizziness or
2  fatigue, no bladder or bowel dysfunction, no abdominal pain, and no writs pain at the time."
3  (Ogbuehi Decl. ¶ 5, Ex. A.)  "After the physical evaluation, [Ogbuehi] determined that a cane
4  and/or back brace were not medically indicated for his chronic medical condition.  (Id.)  Rather,
5  Ogbuehi opined based on her medical experience and training that the use of a cane and/or back
6  brace "would be contradicted for long term use because it would cause [Plaintiff's] muscles to
7  atrophy further and would do more harm than good."  (Id.)  Consequently, Ogbuehi "ordered
8  new orthotic shoes for [Plaintiff], referred him to physical therapy, and discontinued his chronos
9  for the cane and back brace."  (Id.)

10  During the second follow up appointment on February 28, 2019, Plaintiff reported lower
11  back pain and a sprained ankle.  (Ogbuehi Decl. ¶ 6, Ex. B.)  Ogbuehi declares that she examined
12  Plaintiff "and noted, among other things, [Plaintiff] had no swelling to ankle, no leg weakness,
13  and Plaintiff had a steady gait."  (Id.)  Ogbuehi concluded that there was no significant change in
14  Plaintiff's condition.  (Id.)  Nonetheless, Ogbuehi "ordered an x-ray examination of [Plaintiff's]
15  ankle and scheduled a follow up for physical therapy."  (Id.)

16  During the third visit on April 8, 2019, Plaintiff complained of intermittent increases in
17  right shoulder, right elbow, right ankle, and back pain.  (Ogbuehi Decl. ¶ 7, Ex. C.)  Plaintiff also
18  requested physical therapy.  (Id.)  Ogbuehi declares that she physically examined Plaintiff "and
19  noted, among other things, that Plaintiff had no new trauma, [Plaintiff] had full range of motion
20  of his right shoulder, right elbow, and right ankle with a steady gait, and [Plaintiff's] right ankle
21  x-ray was negative."  (Id.)  Ogbuehi "ordered Capsaicin topical cream and Oxcarbazepine to
22  treat his chronic pain[,]" and referred Plaintiff "for a physical therapy consultation and advised
23  [Plaintiff] to continue exercises and use of orthotic shoes to treat his right ankle pain."  (Id.)

24  During the fourth appointment on July 23, 2019, Plaintiff and Ogbuehi discussed
25  medications and ongoing management of his chronic pain issues.  (Ogbuehi Decl. ¶ 8, Ex. D.)
26  "After a physical examination, [Ogbuehi] advised [Plaintiff] to continue his current medication
27  and exercise routines."  (Id.)  Ogbuehi also advised Plaintiff "to return to the clinic if needed for
28  further relief."  (Id.)  A follow up appointment for his chronic care needs was scheduled.  (Id.)

1         Irrespective of any comments made by Defendant Ogbuehi, as alleged by Plaintiff, the
2 undisputed evidence demonstrates that Ogbuehi evaluated, treated, and monitored Plaintiff's
3 chronic medical conditions.  Although Ogbuehi denied the use of a cane and back brace based on
4 her medical experience and training that the use of such equipment would be harmful to Plaintiff.
5 (Ogbuehi Decl. ¶ 5, Ex. A.)  It is Plaintiff's burden to prove deliberate indifference (see Johnson
6 v. Roche, No. CIV S-06-1676 GEB EFB P, 2009 WL 720891, at *10 (E.D. Cal. Mar. 13,
7 2009), findings and recommendations adopted by 2009 WL 902261 (E.D. Cal. Mar. 31, 2009)),
8 and he has not presented any evidence demonstrating that Defendant Ogbuehi did not evaluate
9 Plaintiff as indicated in her treatment notes, or that she did not pursue the course of treatment
10 reflected in the records.  Plaintiff's conclusory contentions are insufficient to create a genuine
11 dispute regarding whether Ogbuehi treated Plaintiff as described in her treatment notes. The
12 Court is not required to accept Plaintiff's self-serving statements where they are contradicted by
13 both Ogbuehi's medical records as well the review of his medical records by Gonzales and
14 Onyeje.  The evidence presented demonstrates that Ogbuehi did not deny treatment for Plaintiff's
15 chronic pain, as she provided him with orthotic shoes, medications, an x-ray examination,
16 follow-up medical appointments and referral to physical therapy.  (Ogbuehi Decl. ¶¶ 5-8, Exs. A-
17 D.)
18         The mere fact that a prior medical professional recommended a cane and/or brace does
19 not demonstrate deliberate indifference by Defendant Onyeje.  Indeed, Plaintiff presents no
20 evidence that Onyeje's course of treatment was medically unacceptable.  Plaintiff filed an
21 opposition accompanied by several exhibits which are not incorporated by reference or cited to
22 with any specificity.  The parties bear the burden of supporting their motion and opposition with
23 the papers they wish the Court to consider and/or by specifically referencing any other portions
24 of the record they wish the Court to consider.  Carmen v. San Francisco Unified School Dist.,
25 237 F.3d 1026, 1031 (9th Cir. 2001).  The Court will not undertake to mine the record for triable
26 issues of fact.  Id.; see also Gordon v. Virtumundo, Inc., 575 F.3d 1040, 1058 (9th Cir. 2009)
27 ("The 'party opposing summary judgment must direct [the court's] attention to specific, triable
28 facts,' and the reviewing court is 'not required to comb through the record to find some reason to

1  deny motion for summary judgment.") (quoting S. Cal. Gas Co. v. City of Santa Ana, 336 F.3d 885, 889 (9th Cir. 2003) and Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1029 (9th Cir. 2001)) ("[W]hatever establishes a genuine issue of fact must both be in the district court file and set forth in the response.").

On this evidence, the Court cannot find that there is a genuine dispute about whether Defendant Onyeje was deliberately indifferent to Plaintiff's chronic pain and refused to provide him adequate treatment. Accordingly, summary judgment should be granted in favor of Defendant Ogbuehi.

### b.    Defendants Gonzales and Onyeje

Plaintiff contends that Defendants Onyeje and Gonzales were deliberately indifferent to his serious medical needs in the handling of his health care appeals during the relevant time frame. It is undisputed that Gonzales and Onyeje did not provide Plaintiff with medical care. (UF 15.)

Generally, liability is not imposed on a chief medical officer whose sole act was to review medical appeals. See, e.g., Vasquez v. Tate, 2013 WL 1790143, at *8 (E.D. Cal. Apr. 26, 2013), citing Koch v. Neubarth, 2009 WL 4019616, at *5 (E.D. Cal. 2009). However, a medically-trained individual who is made aware of serious medical needs through reviewing a prisoner's appeal may be liable for failure to treat those needs. See, e.g., Thomas v. Nangalama, 2013 WL 1281792, at *7 (E.D. Cal. Mar. 26, 2013) (prisoner's evidence raised triable issue of fact as to whether medical doctor was made aware of alleged ongoing suffering through prisoner's grievance); see also Pogue v. Igbinosa, 2012 WL 603230, at *9 (E.D. Cal. Feb. 23, 2012) ("emerging consensus, therefore, is that a medically-trained official who reviews and denies an appeal is liable under the Eighth Amendment when a plaintiff can show that the official knew, at least in part, from reading the appeal that the plaintiff had a serious medical issue and nevertheless chose not to offer treatment"). Therefore, the court considers whether Defendants Gonzales and Onyeje knew from Plaintiff's appeals that he had a serious medical issue and chose not to offer treatment in violation of the Eighth Amendment.

///

1       Registered Nurse Gonzales declares that she encountered Plaintiff on four separate
2 occasions in which she interviewed Plaintiff as required by her job responsibilities.  (Gonzales
3 Decl. ¶¶ 5-8, Exs. A-D.)  Gonzales "responsibility as the interviewer was to do a chart review
4 and then take the information regarding the inmate/patient's (IP) plan of care and verify with the
5 IP that what was in the record was correct." (Gonzales Decl. ¶ 3.)  She "would then go over the
6 602 process and ask if the IFP had questions.  As the appeal RN, [she] would make sure that all
7 policies and processes were followed in regards to the plan of care and verify that IP either did or
8 did not meet criteria for devices, referrals, etc. based on their PCP notes and consultation notes.
9 However, in [her] position as a registered nurse, [she is] not licensed to prescribe medication,
10 medical treatments, or prescribe or discontinue an inmate's use of durable medical equipment."
11 (Id.)

12      Following the interviews, Chief Medical Officer Onyeje reviewed the appeals, medical
13 records, and Defendant Gonzales's interviews and responded to Plaintiff's grievances based on
14 his review of the medical evidence, training and experience.  (Onyeje Decl. ¶¶ 4-7.)  More
15 specifically, in the April 15, 2019, response to log number PVSP-HC-19000039, Onyeje stated,
16 in relevant part, "Your health care grievance package, health record, and all pertinent
17 departmental policies and procedures were reviewed. Your health records indicate you were
18 evaluated regarding your request to receive medication for your right leg/ankle pain in addition
19 to your request for a cane and/or orthopedic shoes. It has been determined you do not meet the
20 criteria for a cane at this time, however your health records indicate you have received your
21 orthotic shoes and insoles. You have an upcoming primary care provider (PCP) appointment
22 pending. At the time of your appointment you will have the opportunity to discuss your pain
23 management concerns. Your medical condition will continue to be monitored with care provided
24 as determined medically or clinically indicated by the primary care provider. If you have
25 additional health care needs, you are advised to utilize approved processes to access health care
26 services in accordance with California Correctional Health Care Services policy." (Onyeje Decl.,
27 Ex. A.)
28 ///

In the April 16, 2019, response to log number PVSP-HC-19000052, Onyeje stated, in pertinent part, "Your health care grievance package, health record, and all pertinent departmental policies and procedures were reviewed. Your health records indicate you were evaluated regarding your request to receive medication for your right leg/ankle pain in addition to your request for a cane and/or orthopedic shoes. It has been determined you do not meet the criteria for a cane at this time, however your health records indicate you have received your orthotic shoes and insoles. You have an upcoming primary care provider (PCP) appointment pending. At the time of your appointment you will have the opportunity to discuss your pain management concerns. Your medical condition will continue to be monitored with care provided as determined medically or clinically indicated by the primary care provider. If you have additional health care needs, you are advised to utilize approved processes to access health care services in accordance with California Correctional Health Care Services policy." (Onyeje Decl., Ex. B.)

In the September 9, 2019, response, to log number PVSP-HC-19000085, Onyeje stated, in part, "Your health care grievance package, health record, and all pertinent departmental policies and procedures were reviewed. According to your records a cane is not medically indicated at this time as you are able to ambulate around the yard to complete daily activities. You have an upcoming appointment with your primary care provider (PCP) regarding your pain issues.  During your interview with RN Gonzales, you were educated on the 602 process and submitting a 7362 for worsening symptoms or to seek any kind of medical attention.  Your medical condition will continue to be monitored with care provided as determined medically or clinically indicated by the primary care provider. If you have additional health care needs, you may access health care services by utilizing the approved processes in accordance with California Correctional Health Care Services policy." (Onyeje Decl., Ex. C.)

In the October 7, 2019, response, to log number PVSP-SC-19000014, Onyeje found that Ogbuehi did not violate CDCR policy in the medical attention and care provided to Plaintiff. (Onyeje Decl., Ex. D.)

///

13

Based on the interviews, processing, and responses to Plaintiff's appeals, Defendants Gonzales and Onyeje were aware that Defendant Ogbuehi provided Plaintiff with orthotic shoes, medications, an x-ray examination, follow-up medical appointments and referral to physical therapy. Plaintiff has not provided any admissible evidence to show that Defendants Gonzales and/or Onyeje were aware of and deliberately disregarded an excessive risk to his health by failing to intervene in his medical treatment by Defendant Ogbuehi. Rather, in each instance, it is undisputed that Defendants considered Plaintiff's complaints in the various medical appeals and responded to the appeals based on their review of the medical evidence and their training and experience. Accordingly, summary judgment should be granted in favor of Defendants Gonzales and Onyeje.

2.  Retaliation

Plaintiff contends that Defendant Ogbuehi was motivated by retaliation when she determined that Plaintiff should not receive certain items of durable medical equipment for his chronic care needs. Plaintiff also contends that Defendant Gonzales was motivated by retaliation when she alleged advised him to withdraw his health care appeals against Ogbuehi.

Defendants argue the undisputed facts show that their actions were not because of any protected conduct, and their actions advanced legitimate correctional goals, i.e., ensuring Plaintiff received proper medical treatment.

"Prisoners have a First Amendment right to file grievances against prison officials and to be free from retaliation for doing so." Watison v. Carter, 668 F.3d 1108, 1114 (9th Cir. 2012) (citing Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009)). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005). To state a cognizable retaliation claim, Plaintiff must establish a nexus between the retaliatory act and the protected activity. Grenning v. Klemme, 34 F.Supp.3d 1144, 1153 (E.D. Wash. 2014). Mere verbal harassment or abuse does

14

1   not violate the Constitution and, thus, does not give rise to a claim for relief under 42 U.S.C. §
2   1983. Oltarzewski v. Ruggiero, 830 F.2d 136, 139 (9th Cir. 1987). In addition, threats do not
3   rise to the level of a constitutional violation. Gaut v. Sunn, 810 F.2d 923, 925 (9th Cir. 1987).

**a.     Retaliatory Action**

In order to prove a claim of retaliation, a plaintiff must show the defendant acted out of a retaliatory motive, i.e., that the defendant took some adverse action because of the plaintiff's protected conduct. Watison v. Carter, 668 F.3d at 1114; Mccollum v. CDCR, 647 F.3d 870, 882 (9th Cir. 2011). While a plaintiff may use circumstantial evidence like timing, statements, and other evidence to establish retaliatory motive (see Bruce v. Ylst, 351 F.3d 1283, 1288-89 (9th Cir. 2003)), such evidence "must be specific and substantial" to defeat summary judgment. Anthoine v. N. Cent. Counties Consortium, 605 F.3d 740, 753 (9th Cir. 2010). Moreover, timing alone is not sufficient to establish a retaliatory motive. Pratt v. Rowland, 65 F.3d 802, 808 (9th Cir. 1995)

(1)     Defendant Ogbuehi

Here, the evidence demonstrates that Defendant Ogbuehi did not deny certain medical devices out of retaliation because the medical records demonstrate she provided Plaintiff with alternative medical care options, which he simply disagreed with. (Ogbuehi Decl. ¶¶ 5-8, Exs. A-D.) As the Court has discussed in connection with Plaintiff's Eighth Amendment claim, the reason given by Defendant Ogbuehi for her decision to deny Plaintiff's request for a cane and/or brace— that the use of such equipment would be harmful to Plaintiff. (Ogbuehi Decl. ¶ 5, Ex. A.)—does not support an inference that Defendant Ogbuehi was acting for non-medical reasons.

Plaintiff claims that Defendant Ogbuehi that in denying him treatment and/or devices on February 28, 2019, Defendant Ogbuehi stated "write that up snitch." Although unfortunate, Defendant's alleged verbal statement and/or threat to Plaintiff is neither actionable under § 1983, see Freeman v. Arpaio, 125 F.3d 732, 738 (9th Cir. 1997) (allegations of verbal abuse and harassment fail to state a claim under § 1983), overruled in part on other grounds by Shakur v. Schriro, 514 F.3d 878, 884-85 (9th Cir. 2008), nor sufficient evidence for a reasonable jury to find that plaintiff's filing of grievances caused either one of them to adversely alter their course

1 of medical treatment for Plaintiff, see Rhodes, 408 F.3d at 567–68.

2     (2)    Defendant Gonzales

3 With regard to Defendant Gonzales, the evidence demonstrates that Gonzales was not motivated by retaliation during interviews on Plaintiff's health care appeals. (Gonzales Decl. ¶¶ 5-8, Exs. A-D.) In addition, there is no dispute that Plaintiff did not stop submitting inmate appeals during this period of time. (Gonzales Decl. ¶¶ 3-7; Ogbuehi Decl. ¶ 9; Pl.'s Dep. at 48:21-49:11; 61:1-6; 61:25-62:21.)

Plaintiff contends that Gonzales was motivated by retaliation when she alleged advised him to withdraw his health care appeals against Defendant Ogbuehi. However, the evidence demonstrates that during her interviewing and/or processing of the relevant appeals Gonzales reviewed and documented Plaintiff's health care concerns and summarized them for supervisory review by Defendant Onyeje. (Gonzales Decl. ¶¶ 5-8, Exs. A-D.)

Gonzales declares that she never told Plaintiff, during any of the interviews or at any other time, that Plaintiff should withdraw his grievances to avoid any future trouble. (Gonzales Decl. ¶¶ 5-8.) Thus, there is a dispute of fact as to whether Gonzales made the threat. However, a threat to retaliate does not violate Section 1983 if the person making the threat never follows through. See Gaut, 810 F.2d at 925 (prisoner's allegation that he was threatened with bodily harm if he pursued legal redress for beatings did not state a Section 1983 claim). Thus, assuming, for purposes of this motion, that Defendant Gonzales made the threat described by Plaintiff, Gonzales nevertheless is entitled to summary judgment unless Plaintiff comes forth with evidence that Gonzales acted upon the alleged threat or otherwise retaliated against Plaintiff.

As discussed above, Plaintiff was evaluated on four separate occasions by Defendant Ogbuehi who provided orthotic shoes, medications, an x-ray examination, follow-up medical appointments and referral to physical therapy. (Ogbuehi Decl. ¶¶ 5-8, Exs. A-D.) Plaintiff has not provided any probative evidence that the care and treatment he received was based on a retaliatory motive rather than on Defendants' medical judgment. No evidence of retaliatory intent can be reasonably inferred from this factual and undisputed record. See Brodheim, 584

F.3d at 1269 (holding a plaintiff must set forth evidence showing that his treating physician's chosen course of treatment decisions were medically unacceptable, or that his filing prisoner appeals "was the 'substantial' or 'motivating' factor behind the Defendant's conduct.").

### b. Legitimate Penological Interest

To sustain his retaliation claims, Plaintiff must also provide evidence that, "the retaliatory action did not advance legitimate goals of the correctional institution or was not tailored narrowly enough to achieve such goals." Pratt, 65 F.3d at 806 (quoting Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir. 1985)). Therefore, Plaintiff bears the burden of "pleading and proving the absence of legitimate correctional goals" for the constitutional harm he claims. Pratt, 65 F.3d at 806.

(1) Defendant Ogbuehi

Here, Plaintiff has failed to rebut the evidence which establishes that Ogbuehi had legitimate penological interests in exercising her independent medical judgment while managing Plaintiff's chronic care conditions. (Ogbuehi Decl. ¶¶ 5-8, Exs. A-D.) Ogbuehi conducted thorough examinations each time she saw Plaintiff, documenting Plaintiff's complaints, and her objective medical findings, and prescribing ongoing care that was based on her medical judgment. (Id.) Prison officials must provide necessary medical care which includes reviewing all prescribed durable medical equipment and determining whether it is no longer medically necessary. Cal. Dep't Corr. & Rehab. Health Care Dep't Operations Manual, Chapter 15, Art. 6, 3.6.1(e)(8)(B); Miller v. California Dep't of Corr. & Rehab., No. 1:16-cv-02431-EMC, 2018 WL 534306, at *18 (N.D. Cal. Jan. 24, 2018) (taking inmate off medication "not appropriate for his medical condition also advances the legitimate penological goal of reducing prescription drug abuse and drug addiction among the prison population"); Juarez v. Butts, No. 2:15-CV-1996 JAM DB P, 2020 WL 2306850, at *11 (E.D. Cal. May 8, 2020) (concluding that "even if staff was incorrect to conclude that [plaintiff] intended to abuse his medication," the prison doctor's "assessment reflect[ed] a legitimate penological interest in preventing drug abuse") (internal quotation marks and citation omitted); Townsen v. Hebert, No. 3:13-cv-00223-MMD-VPC, 2015

17

WL 5782036, at *4 (D. Nev. Oct. 2, 2015) ("Courts have repeatedly recognized inmates' health and safety as legitimate penological interests.") (citations omitted). Plaintiff's disagreement with the care provided is not sufficient to show that Defendant's care did not advance a legitimate penological goal. See Sepulveda v. Lee, No. CV 10-1705-CAS PJW, 2014 WL 772819, at *3 (C.D. Cal. Feb. 19, 2014) (medical staff entitled to summary judgment on retaliation claim where they presented evidence their medical care was appropriate). Based on this record, and even drawing all facts and inferences in Plaintiff's favor, the Court finds no jury could find Defendant Ogbuehi's course of care and treatment decisions did not reasonably advance a legitimate correctional goal. See Brodheim, 584 F.3d at 1269; Miller, 2018 WL 53406, at *17-18 (granting summary judgment with respect to medical retaliation claim because, even if pain medication was tapered after allegedly protected conduct, the prisoner nevertheless failed to "provide any competent evidence to dispute Defendants' evidence that the reduction and eventual elimination of the morphine reasonably advanced legitimate medical goals.").

(2)  Defendant Gonzales

As to Defendant Gonzales, Plaintiff's claim rests on the allegation that she retaliated against Plaintiff during health care appeal interviews. It is undisputed that Gonzales had a legitimate penological interest in doing her job, documenting and summarizing Plaintiff's medical care concerns for supervisory review by Defendant Onyeje. (Gonzales Decl. ¶¶ 5-8, Exs. A-D.)

Although Plaintiff contends that Defendant Gonzales told him to withdraw the grievance, the fact remains that the evidence presented demonstrates that she documented and summarized Plaintiff's medical care concerns for supervisory review. (Gonzales Decl. ¶¶ 5-8, Exs. A-D; Onyeje Decl. ¶¶ 4-7, Exs. A-D.) Plaintiff has not demonstrated that Gonzales's mere involvement in the inmate health care appeals process as the interviewer is not retaliatory. Miller v. California Dep't of Corr., No. 16-CV-02431-EMC, 2016 WL 3418522, at *4 (N.D. Cal. June 22, 2016) (doctor's review of inmate disagreement with care in the appeals process was not inherently collateral and responses that are anything "other than prompt, cheerful and agreeable

responses" to appeals is not retaliation); Villaneda v. Sayre, No. C-13-5004 EMC (PR), 2014 WL 688795, at *3 (N.D. Cal. Feb. 21, 2014) (denial of an inmate medical appeal or review of the medical care does not support a claim for retaliation).[2]

## IV.

## RECOMMENDATIONS

Based on the foregoing, it is HEREBY RECOMMENDED that:

1. Defendants' motion for summary judgment (ECF No. 50) be granted; and

2. The Clerk of Court be directed to enter judgment in favor of Defendants.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **twenty-one (21) days** after being served with these Findings and Recommendations, the parties may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:  **March 2, 2023**

UNITED STATES MAGISTRATE JUDGE

---

[2] Because the Court finds that Defendants' motion for summary judgment should be granted on the merits, the Court need not reach Defendants' argument for qualified immunity.